**Danny TUTTLE, Plaintiff–Appellant,**

v.

**EQUIFAX CHECK, Defendant–Appellee.**

**No. 1648, Docket No. 98–9462.**

United States Court of Appeals, Second Circuit.

Argued May 21, 1999.

Decided Aug. 19, 1999.

10

Joanne S. Faulkner, New Haven, CT, for Plaintiff–Appellant.

David L. Hartsell, Kilpatrick Stockton, LLP, Atlanta, GA (Patricia J. Campanella, Robinson & Cole, LLP, Hartford, CT, on the brief), for Defendant–Appellee.

Before: CARDAMONE and JACOBS, Circuit Judges, and CARMAN, Chief Judge.[*]

* The Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.

**JACOBS, Circuit Judge:**

Plaintiff Danny Tuttle sued Equifax Check Services, Inc. ("Equifax"), alleging (*inter alia*) that Equifax's $20 service charge for collecting a dishonored check violated sections of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e–1692g (1994), as well as Connecticut law. Tuttle appeals from a judgment entered in favor of Equifax after a jury trial in the United States District Court for the District of Connecticut (Goettel, *J.*), and from the denial of his renewed motion for judgment as a matter of law, *see* Fed. R.Civ.P. 50(b). He argues that the district court erred in the jury instructions and in the denial of his renewed motion for judgment as a matter of law. We affirm.

## BACKGROUND

On February 9, 1997, Danny Tuttle wrote a $57.26 check payable to a Richlin hardware store in Seymour, Connecticut to cover the cost of his purchase. At this store, customers may pay by check only at a single designated sales counter. A sign displayed at that counter warns: "Returned checks are subject to a service charge of $20 or the maximum allowed by law. Collection cost and all penalties permitted by law will also be assessed." Another, much larger, sign prominently displayed on the wall behind that counter similarly gives notice that a service charge applies to dishonored checks.

Equifax contracts with retail merchants like Richlin to provide online, point-of-sale check authorization. When a participating merchant's customer offers to pay by check, the merchant contacts Equifax, which then determines whether or not to authorize acceptance of the check. If Equifax authorizes a check that is later dishonored, Equifax purchases the check from the merchant for full face value and then proceeds to attempt to collect from the customer on its own behalf.

Equifax authorized Tuttle's check, and Richlin accepted it as payment. When Tuttle's check was dishonored, Equifax purchased it from Richlin for $57.26 face value. Equifax sent dunning letters to Tuttle seeking payment on the check plus a $20 service charge that Equifax assesses to defray its collection costs. Tuttle ultimately paid both the check and the service charge.

The FDCPA prohibits (*inter alia*) a debt collector from collecting any service charge "unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[1] 15 U.S.C. § 1692f(1) (1994). At least two Connecticut statutes are relevant to the inquiry of whether a service charge is "permitted by law" for purposes of the FDCPA. Section 52–565a of the Connecticut General Statutes provides that the drawer of a dishonored check shall be liable to the payee for court-determined damages (in addition to the face amount of the check), but only if the payee follows certain statutory requirements.[2] *See* Conn. Gen.Stat. Ann. § 52–565a (West 1991). Article 2 of the Uniform Commercial Code ("UCC"), as adopted in Connecticut, provides that when a buyer of goods has failed "to pay the price as it becomes due," a seller—or "person in the position of a seller," *id.* § 42a–2–707—may recover "incidental damages," *id.* § 42a–2–709, including

---

1. The district court found as a matter of law that Equifax is a debt collector and that Tuttle's dishonored check is a debt as those terms are defined in the FDCPA. Equifax does not dispute these findings on appeal.

2. In part, § 52–565a requires the payee to post notice setting forth (i) the damages that may be imposed for dishonored checks; (ii) the section of the Connecticut General Statutes authorizing such damages; and (iii) the

potential that criminal penalties may also apply. *See* Conn. Gen.Stat. Ann. § 52–565a(e).

In October 1997, subsequent to the events giving rise to this litigation, § 52–565a was amended to permit a payee or its assignee to collect a $20 service charge in connection with a dishonored check "[n]otwithstanding the [other] provisions of this section." *Id.* § 52–565a(i) (West Supp.1999).

"any commercially reasonable charges, expenses or commissions ... otherwise resulting from the breach." *Id.* § 42a–2–710.

Tuttle's July 1997 complaint alleges that Equifax violated the FDCPA by (*inter alia*) adding the $20 service charge without first satisfying the statutory requirements of § 52–565a. Equifax defended on the grounds that (i) it was not required to satisfy § 52–565a, because § 42a–2–709 permits it to impose the service charge as "incidental damages"; and (ii) the service charge was proper even without specific statutory authorization, because Tuttle expressly agreed to the imposition of the service charge when he tendered his check to Richlin.

At trial, Equifax undertook to establish Tuttle's express consent to the service charge by presenting evidence that Tuttle knew the charge could be imposed when he wrote his check. The Richlin store manager testified as to the location and content of the store's service charge notices; the two notices were received in evidence and published to the jury. Tuttle testified that he had seen similar signs in other stores, but he denied seeing them at the Richlin store.

At the end of trial, the district court instructed the jury as to the requirements of the FDCPA. The court noted that the FDCPA permits imposition of a service charge (i) if the agreement creating the debt expressly authorizes such a charge or (ii) if another law permits it. In a clear reference to the UCC, the court instructed that Connecticut law permits collection of incidental damages, which could include service charges:

> In determining whether a service charge is permitted by law, I charge you that the law of this state at the time in question allows a party who has been a party of a dishonored check to recover the amount of the check in addition to any incidental damages. Incidental damages can include any commercially reasonable charges, expenses or commissions. In determining whether the service charge assessed by Equifax was commercially reasonable, you may consider that Equifax is entitled to recover an amount that would ... put it in at least as good a position as if the plaintiff had fully paid his debt in the first place.

*Compare* Conn. Gen.Stat. §§ 42a–2–709 to –710.

The only objection to the charge raised by Tuttle's counsel was to a passage instructing that "at the time this occurred there was no specific state statute" on the subject of service charges for dishonored checks. This particular passage was inconsistent with the paragraph summarizing the UCC; but Tuttle's objection was based on Conn. Gen.Stat. § 52–565a, and on Tuttle's argument that § 52–565a occupied the field. The district court agreed to give a supplemental instruction that a state statute in fact existed at the time Tuttle wrote his check, but refused to instruct the jury that § 52–565a was the exclusive remedy available to Equifax. The supplemental instruction was as follows:

> I had told you earlier that at the time of these events there was no state statute concerning the charge that could be assessed for collecting on a bad check. That's technically wrong. There was a statute, but the statute did not provide a specific amount of money as a maximum.

Following the jury charge, the jury was given a special verdict form that included (*inter alia*) the following interrogatory:

> Do you find that the plaintiff has proven by a preponderance of the evidence that defendant violated the Fair Debt Collection Practices Act by imposing a $20.00 service charge in connection with collecting the debt owed by plaintiff?

The jury checked the box marked "no" for this question, and returned the special verdict form to the court. The jury's negative interrogatory responses defeated all of Tuttle's claims.

After the jury returned its verdict, Tuttle renewed his motion for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(b). The district court denied that motion, and on October 28, 1998 entered judgment in favor of Equifax.

## DISCUSSION

### I

Tuttle argues that the district court erred in the jury instructions and in the denial of his Rule 50(b) motion. We review Tuttle's claims *de novo*. *See United States v. Bok*, 156 F.3d 157, 160 (2d Cir. 1998) (challenged jury instruction reviewed *de novo*, but reversal appropriate only if charge as a whole caused defendant prejudice); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir.1996) (denial of Rule 50 motions reviewed *de novo* ).

Under the FDCPA, Equifax may impose a service charge if (i) the customer expressly agrees to the charge in the contract creating the debt or (ii) the charge is permitted by law. *See* 15 U.S.C. § 1692f(1). In other words,

> If state law expressly permits service charges, a service charge may be imposed even if the contract is silent on the matter;

> If state law expressly prohibits service charges, a service charge cannot be imposed even if the contract allows it;

> If state law neither affirmatively permits nor expressly prohibits service charges, a service charge can be imposed only if the customer expressly agrees to it in the contract.

*See id.; see also* Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097, 50,108 (Fed. Trade Comm'n 1988). We consider first the question of Connecticut statutory law, then address the contract question.

### II

#### A

Tuttle argues that a service charge can be "permitted by law" for purposes of the FDCPA only if a statute *affirmatively* authorizes it; silence is not enough. There is some force to this argument. *Compare National Life Ins. Co. & Subsidiaries v. Commissioner*, 103 F.3d 5, 8 (2d Cir.1996) (plain meaning of legislation is conclusive) (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)), *with Webster's Third New International Dictionary* 1683 (1986) ("permit" defined as "to consent to expressly or formally" or to "authorize"); *see also Newman v. Checkrite Cal., Inc.*, 912 F.Supp. 1354, 1368 (E.D.Cal. 1995). But we need not decide the question because we ultimately conclude that Connecticut law does affirmatively authorize Equifax's service charge. *See infra* Section II.C.

#### B

Tuttle argues that imposition of service charges is governed exclusively by Conn. Gen.Stat. § 52–565a, a statute with which Equifax did not comply. That statute (entitled "Liability of drawer for dishonored check") provides that the drawer of a dishonored check shall be liable to the payee for court-determined damages in addition to the face amount of the check, but only if the payee complies with certain statutory requirements. (The relevant text of the statute is set forth in the margin.[3]) Tuttle argues that Richlin and

3. § 52–565a. Liability of drawer for dishonored check

(a) A drawer negotiating a check who knows or should know that payment of such check will be refused by the drawee bank either because the drawer has no account with such bank or because the drawer has insufficient funds on deposit with such bank shall be liable to the payee for damages, in addition to the face amount of the check, provided the payee has presented such check for payment, the check is dishonored and the drawer fails to pay the face amount of such check within thirty days following the date of mailing by the

Equifax did not comply with the specific requirements of § 52–565a. (Among other things, Richlin's posted notice did not include all the terms required by the statute, and the amount of Equifax's service charge was not determined by a court.) As a result, Tuttle argues, Equifax's service charge was not permitted by Connecticut law and, by extension, was in violation of the FDCPA.

We agree that Equifax did not comply with the requirements of § 52–565a and therefore cannot get damages pursuant to that statute. But § 52–565a is not an exclusive remedy for dishonored checks. It does not purport to occupy the field, nor does it expressly prohibit damages, fees, or service charges imposed by another statute or contract. Further, at the time Tuttle wrote the check, the statute did not mention "service charges." It spoke only in terms of "damages," which were to be determined and imposed by a court, and which could far exceed the $20 service charge collected in this case. *See* Conn. Gen.Stat. § 52–565a(c) (damages cannot

exceed the lesser of the face amount of the check or four hundred dollars). Therefore, § 52–565a does not resolve the issue, and Equifax's service charge for dishonored checks was properly imposed if another statute permitted it or if Tuttle expressly agreed to it.[4]

### C

Article 2 of the UCC, as adopted in Connecticut, provides that "[w]hen the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under section 42a–2–710, the price ... of goods accepted." Conn. Gen.Stat. § 42a–2–709. The "incidental damages" permitted under § 42a–2–709 "include any commercially reasonable charges, expenses or commissions ... otherwise resulting from the breach," *id.* § 42a–2–710, and may be recovered by a seller *or* by a "person in the position of a seller," *id.* § 42a–2–707. The latter includes (as the commentary advises) "a financing agency which has acquired documents ... by discounting a draft for the

payee of the written demand for payment as provided in subsection (f) of this section.
....
(c) In the case of a drawer negotiating a check who knows or should know that payment of such check will be refused by the drawee bank because the drawer has insufficient funds on deposit with such bank, such damages shall be in an amount to be determined by the court in light of the circumstances, but in no event shall such amount be greater than the face amount of the check or four hundred dollars, whichever is less.
....
(e) The damages provided for in this section shall be available only to those persons or entities which post or otherwise give conspicuous notice to the public of the damages which may be imposed pursuant to this section. Such notice shall set forth: (1) The damages that may be imposed if a check is dishonored; (2) the section of the general statutes authorizing imposition of such damages; and (3) that criminal penalties also may apply.
(f) The written demand for payment on the dishonored check shall be in the form prescribed by subsection (g) of this section and shall be sent to the drawer's last-known

residence address or last-known place of business by first class mail and by certified mail return receipt requested with delivery restricted to the drawer, on or after the date the payee received notice that such check had been dishonored.
(g) The written demand for payment required by subsection (f) of this section shall be printed in at least ten-point type in both English and Spanish and shall include the following: (1) The name and last-known address of the drawer; (2) the amount and date of the dishonored check; (3) the bank upon which the check was drawn; (4) the name of the payee; (5) the reason the check was dishonored; (6) the address to which payment should be delivered; and (7) an explanation of the damages which may be imposed pursuant to this section in the event the drawer fails to pay the face amount of the dishonored check.

4. Tuttle cites another statute, Conn. Gen.Stat. § 36a–573, for the proposition that Equifax's service charge is expressly prohibited by state law. That statute, however, is directed to lenders. *See id.* Equifax is not a lender in the circumstances of this case; therefore, § 36a–573 is inapplicable to this situation.

seller...." Conn. Gen.Stat. Ann. § 42a–2–707, comment (West 1990 & Supp.1999). More generally, a "financing agency" is defined in the UCC as one "who in the ordinary course of business ... by arrangement with either the seller or the buyer intervenes in ordinary course to make or collect payment due or claimed under the contract for sale." Conn. Gen. Stat. § 42a–2–104.

This statute permitted Equifax to impose its service charge. Equifax, pursuant to its agreement with Richlin, authorized Richlin to accept Tuttle's check as payment for goods; then, after Tuttle's check was dishonored, Equifax took it from Richlin at face value. Equifax now stands in the position of Richlin *vis à vis* Tuttle and, accordingly, can recover commercially reasonable expenses resulting from Tuttle's breach (his dishonored check). *See id.* §§ 42a–2–104, –707, –710. Equifax's service charge constitutes incidental damages to the extent that it offsets the collection expenses arising from the dishonored check. Equifax offered evidence to show that its collection costs, on average, are slightly in excess of $20 per dishonored check. It was therefore within the province of the jury to find the $20 service charge was commercially reasonable. *See id.* § 42a–2–710.

In short, under the UCC, Equifax (a "person in the position of a seller" of goods) was permitted to impose and collect its service charge (commercially reasonable "incidental damages") as part of its recovery of the face value of Tuttle's check ("the price ... of goods accepted").

### III

■ Because Connecticut law does not expressly prohibit imposition of service charges for dishonored checks, *see supra* Section II.B, the jury's verdict could also have rested on the other prong of the FDCPA, which permits imposition of a service charge if "such amount is expressly authorized by the agreement creating the debt." 15 U.S.C. § 1692f(1).

The Federal Trade Commission commentary on the FDCPA notes that an agreement to pay a service charge to a debt collector may be formed without a writing: "For example, he may collect a service charge on a dishonored check based on a posted sign on the merchant's premises allowing such a charge, if he can demonstrate that the consumer knew of the charge." Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. at 50,108.

Equifax presented evidence demonstrating that Tuttle knowingly consented to the potential imposition of the charge: Tuttle made his purchase at the sales counter specifically set aside for check transactions; there were two posted notices at that counter notifying customers of the service charge, one of which was quite large; further, Tuttle testified that he had seen similar signs in other stores. Although Tuttle denied seeing this particular sign, the jury was free to discredit Tuttle's denial and find, based on the other evidence, that Tuttle had in fact seen the posted notice and contracted with Richlin to pay the service charge in the event his check was dishonored. *See United States v. 121 Allen Place*, 75 F.3d 118, 121 (2d Cir.1996) ("[T]he jury was entitled to credit or disbelieve any or all of the ... testimony."). This too is sufficient support for the verdict.

■ Tuttle thinks it is unlikely that the jury even considered the contractual prong of the FDCPA because the district court's charge and special verdict form did not separately alert the jury to the alternative grounds for their verdict. Tuttle, however, had earlier asked for a composite instruction similar to the one delivered by the district court; he never asked that the district court prepare separate interrogatories for each prong; and he never objected to the charge on this ground, or to the form of the interrogatories on any ground. He has therefore waived this argument. *See Lavoie v. Pacific Press & Shear Co.,*

975 F.2d 48, 55 (2d Cir.1992) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection."); *see also United States v. Young,* 745 F.2d 733, 752 (2d Cir.1984) ("[N]ot even the plain error doctrine permits reversal on the ground that the trial court granted a defendant's request to charge."); *Janel Sales Corp. v. Lanvin Parfums, Inc.,* 396 F.2d 398, 406 (2d Cir.1968) (where plaintiffs' counsel acknowledged propriety of interrogatory substantially similar to one given, plaintiffs did not properly object to interrogatory as required by Fed.R.Civ.P. 51); Fed.R.Civ.P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2558, at 471 (2d ed. 1994) ("[A] party who requests an instruction cannot complain if the instruction, or one substantially like it, is given.").

Tuttle's final argument on the contract prong of the FDCPA is that Connecticut law, specifically Conn. Gen.Stat. § 52–565a, expressly prohibits any contract for a service charge. We have already rejected this argument. *See supra* Section II.B.

## CONCLUSION

The judgment of the district court is affirmed.