# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-4083

MARVIN SEEGER, BRADLEY GAMROTH,
ROBERT MCCLAIN, and JOANNE BLAREK,
on behalf of themselves and all others
similarly situated,

*Plaintiffs-Appellees,*

*v.*

AFNI, INC.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-0714—**William E. Callahan, Jr.,** *Magistrate Judge.*

_____

ARGUED SEPTEMBER 9, 2008—DECIDED DECEMBER 8, 2008

_____

Before BAUER, CUDAHY, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This case involves the legality of
the methods that AFNI, Inc., uses when it undertakes
collection efforts—in this instance, on behalf of Cingular
Wireless. (After the events in this case, Cingular was

acquired by AT&T; for the sake of consistency with the district court's opinion, we refer to it here by its former name.) The district court certified a class of customers in the state of Wisconsin who had received a collection letter during a specified time. The class took the position that AFNI's practices violated both Wisconsin law and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* On cross-motions for summary judgment, the district court ruled that AFNI had not violated Wis. Stat. § 422.202 when it imposed its collection fee, because the cell phone contract was not a "consumer credit transaction." The court also ruled, however, that the plaintiff class was entitled to summary judgment on its claims under the FDCPA and Wis. Stat. § 427.104(j), because neither AFNI's contracts with its customers nor Wisconsin law authorized it to charge the type of collection fee it was using. Plaintiffs were willing to let well enough alone with respect to their defeat on the § 422.202 theory, but AFNI has appealed the judgment in favor of the class. Although we can imagine hypothetical facts under which AFNI would be entitled to prevail, AFNI did not present such a record to the district court. We therefore affirm.

## I

Marvin Seeger, Bradley Gamroth, Robert McClain, and Joanne Blarek each entered into an agreement with the former Cingular Wireless, Ameritech Mobile Communications, or Worldcom, for cellular telephone service. Seeger's contract was with Cingular; it was a monthly plan that included 800 "anytime" minutes and imposed extra

charges for additional time used. The other three named plaintiffs had similar plans with their carriers. At some point, each one fell behind in his or her payments.

AFNI is a debt collection company that purchases accounts from some of its customers. The original contracts between each plaintiff and the cellular telephone provider contained language addressing the possible use of a collection agency. Some Cingular contracts had this to say:

> You agree to pay to CINGULAR the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees and court costs, incurred by CINGULAR in exercising any of its rights and remedies when enforcing any provisions of this Agreement.

Other Cingular contracts said only that "[y]ou agree to reimburse us the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees, we incur in such collection efforts." The contracts also contained various provisions making it clear that failure to pay was cause for termination of the contract and that an early termination fee or cancellation fee would be imposed.

Between September 2004 and June 2005, AFNI sent debt collection letters to Seeger, Gamroth, and McClain, informing each one that he owed a debt and that Cingular was the original creditor. (The parties dispute whether Blarek received that first letter.) AFNI's letter stated that the recipient was responsible for paying AFNI a collection fee of 15% of the "original balance." Some time later, McClain

and Blarek received another form letter from AFNI; the second letter included the collection fee in the balance due. In keeping with its normal practice, Cingular had sold these accounts to AFNI. As part of the transfer, Cingular furnished account information to AFNI on a CD-ROM, and the information on the CD was then uploaded to AFNI's system. The information transmitted by Cingular said nothing about any collection fees that AFNI might or might not charge.

On July 7, 2005, Seeger and Gamroth filed a complaint against AFNI, alleging that its attempt to include a separate collection fee in the amount due violated the FDCPA. On November 29, 2005, they filed an amended complaint that both added McClain and Blarek as plaintiffs and included charges under the Wisconsin Consumer Act, Wis. Stat. §§ 421-425. Six months later, the plaintiffs moved for class certification. The district court (acting through a magistrate judge, by consent of the parties) granted their motion and defined the class as follows:

> (a) All natural persons in the State of Wisconsin (b) who were sent a collection letter by AFNI claiming a collection fee (c) for Cingular telephone service or service of another cellular provider transferred to Cingular, (d) obtained for personal, family or house-hold purposes, (e) which originally included a contract for a minimum term of service of one or more years, and "early cancellation fee" of any amount, (f) on or after July 7, 2004, (g) that was not returned by the postal service.

As noted above, the district court later granted summary judgment in the class's favor, ruling that AFNI's actions

violated the FDCPA because neither the contracts nor Wisconsin law permitted the owner of a debt to impose a separate fee for collection, if the fee was for the purpose of reimbursing the owner itself as opposed to a third-party debt collector. This also meant, the district court concluded, that AFNI had violated the Wisconsin Consumer Act's provision prohibiting a debt collector from trying to enforce a right it knows or has reason to know does not exist. See Wis. Stat. § 427.104(j). AFNI now challenges those rulings on appeal. We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to the non-moving party. *Sound of Music Co. v. 3M*, 377 F.3d 910, 914 (7th Cir. 2007).

## II

In order to be entitled to collect a fee, AFNI must show that the fee is either authorized by the governing contract or that it is permitted by Wisconsin law. See 15 U.S.C. § 1692f(1). In AFNI's view, the district court erred when it rejected each one of these alternatives.

## A

We consider first whether Wisconsin law allows a debt collector in AFNI's position to impose the 15% fee that AFNI wanted to charge. AFNI argues that the fee falls within the definition of incidental or consequential damages for the customer's breach of the underlying contract. Therefore, it reasons, the fee may be collected by an entity that purchases the contract for collection purposes.

AFNI is correct to point out that Wisconsin (like every state) permits recovery of losses that are the natural and probable result of the breach of a contract and that were within the reasonable contemplation of the parties. *Magestro v. N. Star Envtl. Const.,* 649 N.W.2d 722, 725-26 (Wis. Ct. App. 2002); *Peterson v. Cornerstone Prop. Dev., LLC,* 720 N.W.2d 716, 730 (Wis. Ct. App. 2006). This rule applies to service contracts like the plaintiffs' cell phone contracts, just as it applies to employment and construction contracts. See *Handicapped Children's Educ. Bd. v. Lukaszewski,* 332 N.W.2d 774, 778 (Wis. 1983).

The fact that Wisconsin follows this well established rule is not enough, by itself, to allow AFNI to recover. It must show that this rule permits a third-party purchaser of an account to recover its internal costs to recover the debt in this manner, and, if so, that the 15% fee it charged to the plaintiffs reflected AFNI's actual costs. To establish the first proposition, AFNI relies heavily on the Second Circuit's decision in *Tuttle v. Equifax Check,* 190 F.3d 9 (2d Cir. 1999). In *Tuttle,* the plaintiff, while he was standing just under a prominent sign warning that a collection fee of $20 would be imposed for dishonored checks, wrote a check for approximately $57 at a hardware store. His check, though authorized by Equifax, later bounced. Under the contract between Equifax and the store, Equifax guaranteed all checks that it authorized. When a check was dishonored, Equifax was obligated to purchase it at face value and then pursue collection efforts on its own.

Tuttle asserted that Equifax was not entitled to collect a $20 fee in conjunction with its effort to collect on the $57

check, but the jury rejected his arguments and the Second Circuit affirmed. The court found that Connecticut law authorized the collection of the fee:

> Article 2 of the UCC, as adopted in Connecticut, provides that "[w]hen the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under section 42a-2-710, the price . . . of goods accepted." Conn. Gen. Stat. § 42a-2-709. The "incidental damages" permitted under § 42a-2-709 "include any commercially reasonable charges, expenses or commissions . . . otherwise resulting from the breach," *id*. § 42a-2-710, and *may be recovered by a seller or by a "person in the position of a seller*," *id*. § 42a-2-707. The latter includes (as the commentary advises) "a financing agency which has acquired documents . . . by discounting a draft for the seller. . . ." Conn. Gen. Stat. Ann. § 42a-2-707, comment (West 1990 & Supp. 1999). More generally, a "financing agency" is defined in the UCC as one "who in the ordinary course of business . . . by arrangement with either the seller or the buyer intervenes in ordinary course to make or collect payment due or claimed under the contract for sale." Conn. Gen. Stat. § 42a-2-104.

190 F.3d at 14-15 (emphasis added). In the alternative, the court found that Tuttle had agreed to the imposition of the collection fee when, in full view of the sign alerting him to the $20 fee, he tendered his check.

Neither a law expressly permitting a collection fee on behalf of a person in the position of a seller of cellular

telephone services nor an agreement between the class members and their cellular providers exists here. That might not matter if the record contained any information that would indicate whether or not the 15% collection fee AFNI imposed can properly be characterized as incidental or consequential damages resulting from the plaintiffs' breach of their cellular phone contracts with Cingular. But it does not. The record does not even reveal whether AFNI paid 100 cents on the dollar for Cingular's delinquent accounts, or if (as is common), it purchased the portfolio of accounts at a discount, thereby compensating itself up front for the expense of its collection efforts and the risk that some accounts might prove to be uncollectible. From Cingular's point of view, the incidental or consequential damage from its customer's failure to pay is the discount it had to absorb, if any existed, when it sold the debt to AFNI. But the record contains no evidence that would support the proposition that there was any discount, much less whether it equaled 15% of the face amount of the debts, or any other amount for that matter. The record also does not reveal whether AFNI's business model involved some combination of the 15% fee and a discount on accounts it purchased. In short, AFNI failed to present the necessary evidence that would permit a fact-finder to conclude that *AFNI*'s cost of debt collection should be characterized as an incidental or consequential expense of the customer's underlying breach of his or her contract with Cingular.

For the sake of completeness, we add that the Wisconsin statutes at issue here do not contain the same kind of language that UCC § 2-707 has, and on which the Second

Circuit relied in *Tuttle*. This was important to the *Tuttle* court's conclusion; it did not hold that all damages that can be characterized as incidental or consequential may automatically be added on as a debt collection fee. This alone might not be enough to defeat AFNI's position, if we were to conclude that Wisconsin courts would not draw a distinction between a fee that the initial creditor charged its customers and a fee imposed by the debt collector. But, on this record, such a conclusion would not help AFNI.

That is because the record is insufficient to support a finding that the 15% collection fee reflects AFNI's actual costs. AFNI relies exclusively on the following statement by John Hess, its director of business development: "The 15% collection fee is substantially less than the average collection costs on the collection accounts transferred to AFNI by Cingular." Hess did not explain how he reached this conclusion, nor does the record contain any other data that might support him. Indeed, the implication of Hess's statement is a bit odd. If AFNI is truly charging a collection fee that is "substantially less" than its costs, then AFNI (a company in the debt collection business, after all), is pricing its services "substantially" below cost. As we have already noted, we might guess that AFNI is also covering its costs through the discount rate at which it purchases its accounts, but we have no idea what that rate is.

It is also worth noting that Equifax charged a set $20 fee for each check, while AFNI charged a percentage fee that necessarily varied with each account. For example, AFNI charged Seeger $15.87, Gamroth $50.44, and McClain

$190.39. But the costs that AFNI describes in its brief, for items such as computer equipment, personalizing form letters, and sorting accounts, appear to be constant across accounts. AFNI has not provided any evidence suggesting that the 15% figure nonetheless works out to be an average that compensates it for its efforts. Hess, in fact, disclaimed any such position.

B

AFNI also argues that the contracts between Cingular and the plaintiffs authorized Cingular to charge a collection fee, and thus, as Cingular's assignee, it was also authorized to charge such a fee. Although the plaintiffs signed different versions of Cingular's contract, the relevant clauses all refer to a right to collect fees of third parties, such as collection agency fees, court costs, and attorneys' fees. The clauses speak of Cingular's incurring those fees itself and then the consumer's reimbursing Cingular.

The district court held that the contracts do not authorize Cingular to charge its customers a fee when it handles the collection process on its own; instead, they authorize a fee only when Cingular farms out the process to a third party. The district court concluded that Cingular itself could not charge a collection fee that was neither the result of a referral of an account, nor reimbursement of fees charged to it by a collection agency, nor as part of an incurred cost. The use of the word "referral" implies the existence of a third party; Cingular was not "referring" accounts to itself. Nor does it make sense to think that Cingular was charging

itself a collection fee, which plaintiffs then would have to reimburse. Finally, the district court reasoned that the 15% collection fee was not a cost that Cingular would "incur." As the court pointed out,

> [t]he language of the contract does not simply state that a customer agrees to "pay all costs including . . . collection fees." Rather, the contract states that the customer agrees to "pay all costs including . . . collection fees . . . we incur in enforcing this Agreement." As with the provision referencing reimbursement, a collection fee which is never paid is not a cost that Cingular would incur. Such being the case, AFNI, as with Cingular, could not charge a collection fee as part of a cost it incurred, as AFNI did not pay a collection fee to anyone.

AFNI's only response to this analysis is to assert that Cingular could have charged customers the 15% fee if it had referred the debt to AFNI for collection and AFNI had charged Cingular 15% for collection services. But this is not how Cingular and AFNI handled their relationship. Instead, Cingular chose to sell its delinquent accounts in bulk for a price that was acceptable to AFNI. Without more evidence in the record, we have no basis on which to conclude that AFNI's fee should be regarded as the equivalent of the referral fee that Cingular warned its customers they might have to bear. The simple addition of the words "including collection fees" to the contract would have cured the problem.

C

Finally, AFNI argues that it is entitled to invoke the *bona fide* error defense that the FDCPA recognizes. The statute provides that a debt collector is not liable if its violation was not intentional and instead resulted from a *bona fide* error. See 15 U.S.C. § 1692k(c). The parties here agree that AFNI did not intend to violate the FDCPA, but they dispute whether the defense applies to mistakes of law, whether AFNI's error was *bona fide,* and whether AFNI maintained reasonable procedures designed to prevent this kind of error.

This court has not yet decided whether the *bona fide* error defense applies to mistakes of law. Recently, we noted that a split exists among the circuits on this question. See *Nielsen v. Dickerson,* 307 F.3d 623, 640-41 (7th Cir. 2002). We noted there that the majority of our sister circuits, including the Second, Eighth, and Ninth, have limited the defense to factual and clerical errors, while a "growing minority" have applied the defense to mistakes of law. *Id.* (quoting *Johnson v. Riddle,* 305 F.3d 1107 (10th Cir. 2002)). *Nielsen* notes that the majority view relies on an analogy to a similar *bona fide* error provision in the Truth in Lending Act. Yet, as *Nielsen* also observes, the Truth in Lending Act specifically excludes mistakes of law, while the FDCPA has no such exclusion. *Nielsen,* 307 F.3d at 640-41.

We have no need to take sides on the circuit split in this case, because, even assuming that AFNI's mistake was a mistake of law, it cannot prevail for other reasons. Unless a party maintains reasonable procedures to avert a viola-

tion, the defense does not apply. Here, AFNI argues that it maintained such procedures to prevent collecting unauthorized fees because it has a compliance committee that reviews legal summaries prepared by the American Creditor Association ("ACA") and the Debt Bar Association. AFNI also submits its form letters to the ACA. Hess testified that he regularly reads excerpts of the relevant Wisconsin statutes. The plaintiffs respond that AFNI's procedures are inadequate as a matter of law. The ACA addresses only compliance with the FDCPA, not with Wisconsin law or individual contracts. AFNI never consulted an attorney in Wisconsin on state law issues, nor did it ask a Wisconsin governmental agency whether it was entitled to charge a collection fee as the owner of the debt.

AFNI's steps do not amount to reasonable procedures, as the statute uses that term. To the contrary, applying the *bona fide* error defense here would essentially reward a business's ignorance of the law. Hess's deposition implies that AFNI never knew that charging a fee as the owner of a debt was different from charging a fee as a service provider for another entity:

> Q: So you—it's your—was your understanding of whether collection fees are permitted on this type of accounts in the State of Wisconsin limited to the absence of information on it in that ACA manual prior to the lawsuit?
>
> A: That document as well as any other published bulletins that would have come to my attention.

Q: Do you remember specifically any of those?

A: There's periodic notification of e-mails on a daily basis from the Debt Buyers Association, from the credit and collection industry associations, you know, late breaking news. So there was never anything that came to my attention otherwise. But the primary basis for our understanding of Wisconsin and its associated statutes would have been based on the ACA documentation.

In the end, AFNI is not arguing that it relied on an informed, but mistaken, legal opinion. It is saying that its ignorance of the law should be excused because it attempted to keep itself informed about the law through the various trade association communications. This is not enough, in our view, to support the *bona fide* error defense.

AFNI also appeals the district court's finding that AFNI violated Wis. Stat. § 427.104(j), but AFNI's argument is limited to asserting that it did not know charging its 15% fee violated the FDCPA. The district court found that AFNI should have known it did not have the right to collect a 15% fee for the same reasons AFNI does not qualify for the *bona fide* error defense. We agree with the district court.

\* \* \*

Our review of this case persuades us that the district court was correct, on the record before it, to grant summary judgment in favor of the plaintiff class on its claims

based on the FDCPA and Wis. Stat. § 427.104(j). We therefore AFFIRM the judgment of the district court.