In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 17-3629

JOSEPH BERNAL, individually and on
behalf of others similarly situated,

*Plaintiff-Appellant*,

*v.*

NRA GROUP, LLC,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 1904 — **Gary Feinerman**, *Judge*.

———————————

ARGUED MARCH 28, 2019 — DECIDED JULY 19, 2019

———————————

Before RIPPLE, MANION, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Joseph Bernal bought a monthly pass
to Six Flags amusement parks. The contract said that if he
fell behind on his payments, he would "be billed for any
amounts that are due and owing plus any costs (including
reasonable attorney's fees) incurred by [Six Flags] in attempt-
ing to collect amounts due." This case asks whether a debt
collector's fee counts as a collection cost under that lan-

guage. We hold that it does. The contract unambiguously permits Six Flags to recover any cost it incurs in collecting past-due payments, and that includes a standard collection fee.

## I. Background

After Bernal missed several monthly payments, Six Flags hired AR Assist, a debt collector, to help recover the balance. Under their contract, AR Assist could charge Six Flags a 5% management fee plus an additional amount based on the number of days the debt was delinquent (in this case, an additional 20%). No one disputes that this was a reasonable fee, nor that arrangements like this are common in the market. In turn, AR Assist hired the NRA Group as a subcontractor.

NRA then sent Bernal a collection letter asking for the $267.31 he owed, plus $43.28 in costs—which is technically even less than the 25% fee NRA was authorized by contract to charge. The letter gave Bernal two options: He could pay the sum directly to NRA, which would then remit the collection fee to AR Assist, minus its own fee. Or he could pay the sum to Six Flags, in which case Six Flags would have to pay AR Assist separately.

Bernal did neither. He reasoned that it couldn't possibly have cost NRA $43.28 to mail a single collection letter. So rather than pay, he filed this class-action lawsuit under the Fair Debt Collection Practices Act ("FDCPA"), alleging that NRA charged a fee not "expressly authorized by the agreement creating the debt." 15 U.S.C. § 1692f(1). Each class member had entered into a contract with essentially the same language.

After rejecting the parties' motions for summary judgment, the district judge held a bench trial. As part of his legal conclusions, he held that the percentage-based collection fee was expressly authorized by the following language in the initial agreement:

> If your account is in arrears for more than 30 days (after you miss two payments) and … the Minimum Term has expired, then your account will be permanently cancelled and you will be billed for any amounts that are due and owing plus any costs (including reasonable attorney's fees) incurred by us in attempting to collect amounts due or otherwise enforcing this agreement.

The judge reached this conclusion even though two other circuits have said otherwise when interpreting almost identical language. Because no class member was charged more than what was authorized by the contracts, the judge entered judgment for NRA.

## II. Discussion

The parties agree that NRA is allowed to collect this fee if it was "expressly authorized by the agreement creating the debt." § 1692f(1). That, in turn, depends on whether the collection fee was a "cost[] … incurred by [Six Flags] in attempting to collect amounts due." The judge said it was, and we review that legal conclusion de novo. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 758–59 (7th Cir. 2010).

We'll analyze the contractual language by breaking it down into two relevant pieces: (1) whether this was a "cost"

and (2) whether this was a cost "incurred … in attempting to collect."

**A. The fee was a "cost."**

According to Bernal, the contract authorizes only "actual costs," which he says include things like letterhead and postage but not collection fees. Yet the contract never uses the term "actual costs," nor does anything in the text suggest it should be read so restrictively.

To the contrary, the contract explicitly allows for "*any* costs." As the Supreme Court recently reiterated, the word "any" signifies breadth. *See Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) (explaining that "Congress' use of the word 'any' suggests an intent to use that term expansively") (quotation marks and alteration omitted); *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct 1743, 1750 (2019) (noting that "'any' ordinarily carries an expansive meaning," at least as a general rule) (quotation marks omitted).

Dictionary definitions confirm that the phrase "any costs" is broad enough to include this fee. A "cost" is simply an "amount paid or charged for something." *Cost*, BLACK'S LAW DICTIONARY (10th ed. 2014). More specifically, "costs of collection" are "[e]xpenses incurred in receiving payment of a note; esp., attorney's fees incurred in the effort to collect a note." *Costs of Collection*, *id.*; *see also Cost*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2014) ("[T]he amount or equivalent paid or charged for something."); *Cost*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th Ed. 2018) ("The expenditure of something, such as time or labor, necessary for the attainment of a goal."). Six Flags outsourced its debt collection, which no

one disputes it was entitled to do. The $43.28 at issue is the amount Six Flags will be charged for that service. Based on standard dictionary definitions, this fee is literally the sole "cost" of Six Flags' "attempt[] to collect" the debt.

To be sure, Bernal is correct that the word "costs" has a narrower meaning in at least one other context. When a court awards costs to a winning litigant, it generally limits the award to a small category of specific expenses. *See, e.g.*, *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2163–64, (2015) (explaining that under the "American Rule," winning litigants generally do not recover additional expenses like attorney's fees). While true, nothing in this contract suggests that the word "costs" bears that narrow meaning here.

To start, observe that *Black's Law Dictionary* includes two different specialized definitions for the term "cost" that are relevant here. One is tailored specifically to litigation, while the other—quoted above—is tailored to debt collection. *Compare Cost* (pl.), BLACK'S LAW DICTIONARY, *supra*, at 423 ("The expenses of litigation, prosecution, or other legal transaction, esp. those allowed in favor of one party against the other."), *with Costs of Collection*, *id.* at 424 ("Expenses incurred in receiving payment of a note; esp., attorney's fees incurred in the effort to collect a note."). Bernal asks us to apply the litigation-centered definition, but the word's meaning is so different in the debt-collection context that it warrants a separate dictionary entry.

Also note that according to *Black's* separate definition for "costs of collection," the term generally includes attorney's fees. And recall that Bernal's contract makes that point explicitly, authorizing the collection of "any costs *including reasonable attorney's fees*." (Emphasis added.) That phrase has

a significant impact on the contract's breadth because the word "including" generally "introduces examples, not an exhaustive list." *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 132 (2012). That the contract includes at least some fees reinforces our conclusion that the word has a broader meaning here than when used elsewhere.

There's one more reason Bernal's interpretation is hard to square with the contract's inclusion of attorney's fees. Had Six Flags paid its attorneys the exact same amount to send the exact same collection letter, then that fee would unquestionably be a "cost" within the meaning of this contract. Bernal says the result should be different when a nonattorney sends the letter, but that distinction says almost nothing about whether a fee falls within the definition of "cost." If attorney's fees are one nonexhaustive example of what's included, we fail to see the basis to exclude analogous collection fees.

We therefore conclude that a percentage-based collection fee is a "cost" within the meaning of this language. In doing so, we acknowledge that we depart from two of our sister circuits. In *Kojetin v. C.U. Recovery, Inc.*, the Eighth Circuit held that a debt collector "violated the Act by adding the collection fee based on a percentage fee rather than on actual costs when [the debtor's] agreement with the credit union provided she was liable only for actual costs." 212 F.3d 1318, 1318 (8th Cir. 2000) (mem.). The contract at issue provided that the debtor would "pay reasonable attorney's fees and costs incident to collection." *Kojetin v. C.U. Recovery, Inc.*, No. 97-2273, 1999 WL 33916416, at *5 (D. Minn. Feb. 17, 1999). In *Bradley v. Franklin Collection Service, Inc.*, the Elev-

enth Circuit said the same of a contract that allowed for "costs of collection, including a reasonable attorney's fee." 739 F.3d 606, 609–11 (11th Cir. 2014).

For our purposes, the language at issue in those cases was materially indistinguishable from the contract at issue here. We nonetheless disagree with those holdings. First, those decisions relied on a pair of assumptions we find questionable: that the contracts at issue authorized only "actual costs," and that "actual costs" necessarily do not include collection fees. As we've seen, the contractual language never mentions "actual costs," and even if it did, it's not obvious why that limitation excludes the fee at issue. The contract allows for "any costs," and the most reasonable reading of that term is to include fees paid in attempting to collect.

Second, the contract at issue in *Bradley*, like the one at issue here, explicitly provided that the term "costs" includes attorney's fees. And attorney's fees are not "actual" costs as the Eleventh Circuit used that term. We decline to hold that the term "costs" bears such a narrow meaning when the contract explicitly tells us that the term is broad enough to include more.[1]

## B.  The fee is a cost "incurred in attempting to collect."

Regardless of the definition of "cost," Bernal argues that the collection fee wasn't authorized because it hasn't been

---

[1] Because this opinion creates a conflict in the circuits, we circulated it to all judges in active service under Circuit Rule 40(e). No judge voted to hear the case en banc.

"incurred" yet. As he correctly observes, Six Flags has no obligation to pay anything until after NRA collects the debt: If Bernal were to pay his debt immediately, Six Flags would owe $43.28 to AR Assist. If he were to flee the country, Six Flags would owe nothing. And if he were to wait a few years and then pay, Six Flags would owe a fee calculated at a different contingency rate. In other words, Six Flags has incurred only a contingent liability—contingent both on whether Bernal pays and when.

The problem with Bernal's argument is its premise: he assumes that because the contract uses the word "incurred," it applies only to obligations that already exist prior to billing. But the contract never says that.

Let's start with the sentence's basic grammar. The word "incurred" is a past participle, which we generally use to form one of two things: perfect tenses or the passive voice. *See* RODNEY HUDDLESTON & GEOFFREY K. PULLUM, THE CAMBRIDGE GRAMMAR OF THE ENGLISH LANGUAGE 1429 (2002). We form the perfect tenses by pairing "have," "has," or "had" with a past participle. We often do so to show the relative timing of two events. Take, for example, "John *had thrown* the ball," which tells us that John threw the ball before a particular point in time. *See Past-Perfect Tense*, GARNER'S MODERN ENGLISH USAGE 1032 (4th Ed. 2016) ("The tense denoting an act, state, or condition was completed before another specified past time or past action."); *see also id.* (explaining the related present-perfect and future-perfect tenses). Bernal thinks the word "incurred" plays a similar role here—that it means Six Flags is authorized to collect a cost only if it was incurred before the bill was sent. But as mentioned, past participles have a second use. We also use

them to form the passive voice, where the speaker flips the order of a sentence so that a passive noun becomes the subject—"the ball *is thrown* by John" as opposed to "John *throws* the ball." Unlike the perfect tenses, the passive voice doesn't necessarily say anything about timing: sometimes it does ("the ball was thrown just before sunset") and sometimes it doesn't ("a football is usually thrown by a quarterback").

The language at issue—"incurred by us in attempting to collect"—is used in this contract to modify the noun "costs." And "[p]ast-participial modifiers are bare passives." HUDDLESTON & PULLUM, *supra*, at 1265. That is, they play the second of the two roles we described. They are "tenseless" because "the verb itself gives no indication of" the relative timing of events. *Id.* at 162. The modifier describes the noun, but the actual timing is "determined by other elements in the sentence or by context." *Id.* To give an example, contrast two phrases: "those arrested yesterday" and "proposals submitted after today." *Id.* The modifier in the first phrase ("arrested yesterday") refers solely to events that occurred in the past, while the modifier in the second phrase ("submitted after today") refers solely to events occurring in the future. Everything depends on the context.

A quick survey of judicial opinions confirms that the past participle is an uncommonly flexible device. Sometimes courts have, as Bernal insists we should, found that a past participle refers to a completed event. *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 41 (2008) (finding that the more natural reading of "plan confirmed under [Chapter 11]" is that it refers to plans confirmed in the past, albeit acknowledging that the alternative reading is "credi-

ble"). In other situations, courts have said that past participles "describe the present state of a thing," just as any other adjective "describe[s] the present state of the nouns they modify." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1722 (2017). In still others, courts have found that past participles can refer to future events. For example, we once said that the past participle "begun" in the phrase "prosecution … begun under any existing act" does not "express[] that verb in its past tense." *Lang v. United States*, 133 F. 201, 204 (7th Cir. 1904). To the contrary, we said that it "perform[s] solely the function of a … verbal adjective, qualifying any prosecutions in mind, pending *or future*." *Id.* (emphasis added). The adjective's sole function was "to show that such prosecution is one under the act." *Id.*

So we have to ask: What role does the modifier play in *this* language? There are two possibilities:

| NRA's Interpretation | Bernal's Interpretation |
|---|---|
| "[Y]ou will be billed for … any costs … incurred by us [*at any point*] in attempting to collect." | "[Y]ou will be billed for … any costs … [*that by that time have already been*] incurred by us in attempting to collect." |

In other words, NRA is arguing that the sentence has a broad temporal range; Bernal is arguing that it says something very specific. But nothing in the contract's actual language says much about timing at all. That silence strongly supports NRA's argument: absent limiting language, "any" should mean "any." It should include costs incurred *at*

*any time*, including those that will necessarily be incurred at the time of payment.

After all, the contract doesn't use "costs incurred" in isolation. Rather, "incurred" is part of a larger adjectival phrase: "incurred by us in attempting to collect." Taken as a whole, the point of that phrase is simply to explain *what* the costs are for and *who* is paying them. In other words, it's a longer way of saying "Six Flags' collection costs." And had Six Flags used those words, there would be no dispute here.

The district judge gave one more reason to think that the word "incurred" lacks a specific temporal restriction. Let's imagine Bernal is correct. In that scenario NRA must first send the debtor a letter demanding payment of the debt. Then, after the debtor writes a check, Six Flags can pay NRA the collection fee. At that point NRA can finally send the debtor a second letter demanding collection costs. But in this scenario, the first letter would mislead the debtor about how much he needs to pay in total, so this could itself violate the FDCPA. *Cf. Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004) ("[W]hen a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may … state those fees and costs and include that amount in the dunning letter. … Indeed, refusing to quantify an amount that the debt collector is trying to collect could be construed as falsely stating the amount of debt."). Bernal claims that NRA violated the statute, but his alternative could be just as problematic.

In response to these arguments, Bernal leans heavily on *Seeger v. ANFI, Inc.*, 548 F.3d 1107 (7th Cir. 2008). There, we approvingly quoted the district court's holding that "a collection fee which is never paid is not a cost that [the

original creditor] would incur." *Id.* at 1113. That much is true, but it's not relevant here. In *Seeger* the debt collector purchased the debt from the original creditor. Because the collector owned the debt outright, it was no longer performing a service for the original creditor, nor would it ever receive a fee. And a cost that will never be charged is not a "cost incurred in collecting a debt." This case is different. The fee arrangement is still in place, and Six Flags will unquestionably be responsible for the amount at issue if Bernal pays.

As a final note, we express no opinion on whether the result would be different if the bill had included purely speculative expenses. *See Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) (holding that a debt collector may not represent that treble damages are part of the "'remaining principal balance' of a claimed debt" until a court actually grants a judgment and authorizes those damages); *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 175 (3d Cir. 2015) (holding that a debt collector cannot include mere estimates of future legal fees in a bill). Whatever relevance that concern might have, it isn't at issue here. The contested $43.28 is not an estimate. It is the precise amount that would have been due had Bernal paid his debt at that time.

*          *          *

In sum, this standard collection fee falls within the contract's broad language authorizing "any costs" of collection. As a result, NRA's collection letter did not violate the FDCPA.

AFFIRMED