In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-1737

RICARDO A. GOMEZ and DEBORA GOMEZ,

*Plaintiffs-Appellants*,

*v.*

CAVALRY PORTFOLIO SERVICES, LLC, and CAVALRY SPV I, LLC,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cv-09420 — **Andrea R. Wood**, *Judge*.

_____

ARGUED DECEMBER 12, 2019 — DECIDED JUNE 19, 2020

_____

Before BAUER, EASTERBROOK, and ST. EVE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In 2009 Ricardo and Debora Gomez stopped paying their debt on a credit card issued by Bank of America. Later that year the Bank concluded that collection was unlikely and treated the account as a bad debt; it stopped sending monthly statements. But it did not tell the Gomezes that they no longer owed the money. In

2011 it sold the debt to Cavalry SPV, which used Cavalry Portfolio Services (Cavalry) to collect. In January 2013 Cavalry sent a letter seeking payment of about $5,800, of which roughly $1,600 was interest for months after the Bank gave up billing the Gomezes. It sent another letter in March 2013 seeking $6,200.

A lawyer for the Gomezes asked Cavalry to verify the debt. In March 2014 the lawyer received this reply:

> Per your request, please find enclosed the verification of your client's debt. Your account is now subject to resumption of collection efforts. You may contact us at [phone number] from [time] Monday through Friday.

This letter added that the balance due was $6,320.13. It did not explain how much of this was interest, but since the original unpaid debt was only $3,226.35, the letter effectively claimed an entitlement to more than $3,000 in interest, including the $1,600 that Cavalry believes had accrued before the Bank sold the account.

Eight months later the Gomezes filed this suit under the Fair Debt Collection Practices Act (FDCPA). They contended that, by demanding interest during the months between the Bank's decision to write off the debt and its sale, Cavalry violated 15 U.S.C. §1692e, which prohibits "any false, deceptive, or misleading representation … in connection with the collection of any debt." Section 1692e(2) adds that this phrase includes a "false representation of … the character, amount, or legal status of any debt". The district court concluded that the Bank had waived interest during the months after the charge-off—despite a non-waiver clause in the contract—by not sending monthly statements. For this conclusion the judge relied on 12 C.F.R. §1026.5(b)(2), which re-

quires banks to send periodic statements during any time when interest or fees are charged to the accounts. But the judge dismissed the suit as untimely. 2018 U.S. Dist. LEXIS 163575 (N.D. Ill. Sept. 24, 2018). The period of limitations is one year, 15 U.S.C. §1692k(d), and the two dunning letters had been sent more than a year before suit began. The verification letter came within a year before the suit, but the judge thought the letter factual and unproblematic.

Plaintiffs presented several legal theories and claims that the district judge did not mention. The decision is nonetheless final. The court entered a take-nothing judgment in defendants' favor. The district judge's omissions could have been bases of appeal (though they aren't) but do not prevent appeal.

Subject-matter jurisdiction is another potential problem. The complaint does not identify a concrete harm that any of the three letters caused, which makes standing to sue doubtful. See, e.g., *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019). We recognize, however, that some decisions of this and other appellate courts have found, or assumed, that standing exists when the dunning letter allegedly violates §1692e. See *Barnes v. Advanced Call Center Technologies, LLC*, 493 F.3d 838 (7th Cir. 2007); *Tourgeman v. Collins Financial Services, Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014); *Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362 (7th Cir. 2018). Cavalry does not ask us to revisit that subject, so we shall take circuit law as we found it, without inquiring whether our older cases are consistent with *Spokeo* and *Casillas*.

The suit is timely with respect to the third letter. Plaintiffs contend that the amount stated in this letter is "false" within

the statute's meaning. That Cavalry sent earlier letters that also demanded $1,600 in interest for time between the write-off and the Bank's sale of the debt to Cavalry is neither here nor there. Each violation of a federal statute carries its own period of limitations. See *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The third letter was not an inevitable consequence of the first two. Cf. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). It was a stand-alone response to a demand for verification, and it could have omitted or recalculated the amount claimed.

Consider a hypothetical from the law of torts. If Perkins alleges that a postal truck negligently dented her car in January 2018, again in January 2019, and a third time in January 2020, a claim and suit about the third dent under the Federal Tort Claims Act, which has a two-year period of limitations, 28 U.S.C. §2401(b), could be filed any time before the end of 2021. Each tort would be a distinct claim with its own period of limitations. A negligent driver could not acquire immunity by waiting, before transgressing again, until the time to sue on an earlier wrong had expired. Just so with letters said to violate the Fair Debt Collection Practices Act. Cf. *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019) (time to sue under the Act begins on the date of each violation, rather than at some different time determined by principles of equity).

But we do not think that the third letter violates the statute. Plaintiffs' contention that it is "false" or "misleading" to seek any amount greater than a court eventually finds to be due lacks support in the statute, when we use the word "false" as people commonly use it. We can see how it could be "false" to seek payment on a debt that cannot be collected at all. That's the basis for our holding in *Pantoja v. Portfolio*

*Recovery Associates, LLC*, 852 F.3d 679 (7th Cir. 2017), that the statute forbids a debt collector to send dunning letters when the debt collector knows that a court would be sure to reject the claim, because the statute of limitations on collection had expired. (*Pantoja* reserves the question whether it is proper to send such a letter if the sender adds that the debt is unenforceable but asks the debtor to pay on moral rather than legal grounds.) Yet the sort of claim that Cavalry presented is not one that any careful debt collector would know to be unenforceable.

The Gomezes promised to pay interest, and Cavalry's computer used the correct rate. The contract provided that the Bank's inaction or silence would not waive any of its rights. The Bank's failure to send monthly statements, coupled with 12 C.F.R. §1026.5(b)(2), *might* block the collection of interest for the months before the debt was sold—but perhaps the right way to enforce §1026.5(b)(2) is to impose administrative penalties rather than deem contractual interest to be forfeited. That was (and remains) a topic for litigation.

A demand for payment cannot be called "false" just because, several years later, a judge disagrees with a legal argument supporting the debt collector's calculation of how much is due. A statement is false, or not, when made; there is no falsity by hindsight. All of the decisions in this circuit in which a letter was deemed to have falsely stated the amount of the debt dealt with errors known or readily knowable when the letter was sent. See, e.g., *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1111–13 (7th Cir. 2008) (unauthorized collection fee); *Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004) (attempt to collect court costs when none had been allowed by a court).

In a post-argument submission, plaintiffs concede that developments after a letter has been sent do not render it false. Still, relying on *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004), they contend that a debt collector must openly state the legal position behind its calculation, if it wants to avoid having a letter tagged as misleading or worse. We need not decide whether this reading of *Fields* is correct because plaintiffs' position encounters a further problem: Cavalry sent the third letter to a lawyer, not to a potentially credulous debtor.

*Bravo v. Midland Credit Management, Inc.*, 812 F.3d 599, 603 (7th Cir. 2016), concludes that the right question under §1692e for a letter to counsel is whether it would deceive or mislead a competent attorney. *Bravo* cited many other decisions in this circuit, dating back to *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). Lawyers often receive and critically evaluate demands against their clients. They have the resources to determine for themselves whether those demands are valid. If the plaintiffs' lawyer doubted the propriety of the figure mentioned in the verification letter, he could have followed up with Cavalry or advised his clients not to pay the $1,600, which the first two letters showed had been included. Cavalry did not need to explain to a lawyer something that the first two letters revealed, and it certainly did not need to provide a disquisition on the non-waiver clause in the contract or Cavalry's take on 12 C.F.R. §1026.5(b)(2). Verification of a debt is supposed to be a simple process, not an occasion for a legal brief.

Several circuits agree with *Bravo* and its predecessors about how §1692e applies to correspondence between debt collectors and debtors' lawyers. See, e.g., *Kropelnicki v. Siegel*,

290 F.3d 118, 128 (2d Cir. 2002); *Powers v. Credit Management Services, Inc.*, 776 F.3d 567, 573–75 (8th Cir. 2015); *Dikeman v. National Educators, Inc.*, 81 F.3d 949, 953–54 (10th Cir. 1996). Others see matters differently. See, e.g., *Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 269–70 (3d Cir. 2013); *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1277 (11th Cir. 2016). Plaintiffs have not asked us to abandon the standard of *Bravo* and its predecessors, and we are not disposed to jump from one side of a circuit conflict to the other without a powerful argument based on the statute's language.

The third letter would not have misled a competent lawyer, who also would not deem "false" a demand by a potential opponent in litigation just because counsel believes that his client may be able to persuade a judge that there is a defense.

Plaintiffs advance an argument for declaratory and injunctive relief, which they say is not under the federal statute—but they do not develop a substantive argument under any other body of law. This means that the judgment dismissing the suit must be

AFFIRMED.