ESTATE OF NOTTINGHAM: GEIWITZ and others, Appellants,
v. DANIELSON, Guardian, and others, Respondents.

*No. 182. Argued March 6, 1970.—Decided April 3, 1970.*
(Also reported in 175 N. W. 2d 640.)

581

582

For the appellants there was a brief by *Roberts, Boardman, Suhr & Curry,* and oral argument by *Bradway A. Liddle, Jr.,* all of Madison.

For the respondent Department of Veterans Affairs, State of Wisconsin, the cause was argued by *Roy G. Mita,*

assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. The Wisconsin statutes establish the authority of the Wisconsin Department of Veterans Affairs to manage and operate the Grand Army Home for Veterans at King. Secs. 45.365 and 45.37, Stats., set forth the criteria for the management of the Home and the eligibility of veterans and certain close relatives for admission to the Home. In general, a veteran or close relative must lack the adequate means to support himself and be temporarily or permanently incapacitated due to physical disability or age.

Both the 1963 and 1965 statutes provide as a condition of eligibility that any assets in excess of $1,000 be turned over to the state for the use and benefit of the Home. Any assets disposed of by gift or sale for an inadequate consideration within five years prior to application are considered to be assets for this computation unless it is determined that the disposition of the property was not in contemplation of entrance into the Home.

When Anna Geiwitz applied for re-admission in August of 1965, sec. 45.37 (9), Stats. 1963, was in effect. The statute required that a portion of her annual income in excess of $240 was to be paid into the general fund, and all income in excess of $840 was to be paid in toto into the general fund. In her application she agreed to abide with the statutory schedule which was set forth and agreed to report to the commandant any income that she should "receive or acquire."

Sec. 45.37 (9), Stats. 1963, the statute in effect at the time the application was made, provided:

"Each member of the home, regardless of the date of his admission, shall pay the following portions of his annual income into the general fund of the state. . . . 'Income' as used in this section, shall include, without limitation by enumeration, all pensions from state, federal or private sources, annuities, social security pay-

ments and recurrent insurance payments from state, federal and private sources but shall not include wages, salary or payment to a member for services rendered to the home as an employe thereof. . . ."

During 1965, but subsequent to the execution of both applications for admission by Anna Geiwitz, the statute was amended by ch. 295, sec. 24, of the Laws of 1965. Although that law was not in effect at the time Anna Geiwitz made her applications to the Home at King, it was in effect at the time of the death of Sophia Nottingham on November 21, 1967. The 1965 amendment, among other things, redefined income to provide:

"Each member of the home, regardless of the date of his admission, shall pay the following portions of his monthly income into the general fund of the state. . . . 'Income' as used in this section, means money, property or anything of monetary value received from any source to which a member may become entitled subsequent to admission, to include, without limitation by reason of enumeration, all pensions from state, federal or private sources, annuities, social security payments, railroad retirement, public or private retirement, compensation, wages, salary, alimony, rents, interest, dividends, profits, return on investment, moneys received for loss, damage or injury, awards, gifts, devises, bequests and hereditaments, and insurance benefits but shall not include wages, salary or payment to a member for services rendered to the home as an employe thereof. . . ."

The trial court concluded that Anna Geiwitz's right to inherit from Sophia Nottingham accrued on the date of Sophia Nottingham's death and that, therefore, the legal effect of the renunciation was to be determined by reference to the 1965 statute (which became effective after the date of the application for admission and prior to the date of death), which specifically defined income to include an inheritance as a part of the "formula for member income payments." Under this rationale, the trial judge held that Anna Geiwitz was subject to a

statutory disability which precluded her from renouncing the intestate inheritance.

We disagree with the trial court's determination that the 1965 statute was applicable. It is our opinion that the contractual rights and obligations of Anna Geiwitz were determined by the statutory provisions of 1963 with which she agreed to abide at the time of her application and which were incorporated, in part, therein. A contract between Anna Geiwitz and the Veterans Home was created when her application was accepted and she was admitted to membership at King.

In *Pawlowski v. Eskofski* (1932), 209 Wis. 189, 244 N. W. 611, the Wisconsin Supreme Court relied upon decisions of the United States Supreme Court in construing art. I, sec. 10, of the United States Constitution, holding that a statute will not be given retroactive effect if, in so doing, it would deprive the parties of a valuable right. Our court in *Pawlowski* stated:

"That court long ago held that any statute, whether remedial or not, that operated to deprive a party to a contract antedating the enactment of the statute of any valuable right secured to him by that contract is void as to that contract. *Edwards v. Kearzey,* 96 U. S. 595. If a statute substantially lessens the value of a pre-existing contract the constitutional provision bars application of it to the contract. Many decisions of the supreme court of the United States have so held. This was held as far back as 6 Howard, where it is said in *Planters' Bank v. Sharp* (p. 327) :
" 'One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not, by the constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force.' " (p. 193)

It is therefore apparent that if the 1965 statute as applied to Anna Geiwitz increases her obligations under the contract or otherwise impairs her rights, the application

of the statute is unconstitutional as to her. The trial court, however, took the position that the law applicable for the interpretation of the contract was not the law in effect at the time of its execution but the law in effect at the time of the incident, the death of Sophia Nottingham, which occasioned the interpretation of the contract. No authority is cited for this proposition and it appears, in the factual framework of this case, to be contrary to basic principles of constitutional law. We believe that such interpretation, if followed by this court, would result in an unlawful impairment of contract.

The trial judge, however, by implication, also takes the position that the new statute did not in fact add to obligations of Anna Geiwitz but merely had as its purpose the clarification of the term, "income," which was used in the 1963 statute. We think not. As pointed out above, the 1965 amendment clearly included a "hereditament" as a type of income which must be reported and turned over to the state's general fund. The 1963 statute contains no such provision. "Income" in the 1963 statute is defined as:

". . . all pensions from state, federal or private sources, annuities, social security payments and recurrent insurance payments from state, federal and private sources . . . ."

That statute provides that the meaning of the word, "income," shall not be limited by that enumeration. Undoubtedly, income, under this statute, could properly include items other than those set forth, but, as we have previously said, the meaning of words, unless defined by the statute itself, will be determined by their ordinary and common usage. Sec. 990.01 (1), Stats., provides:

"All words and phrases shall be construed according to common and approved usage; the technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."

Counsel for the State Department of Veterans Affairs relies upon the definition of income which appears in the Random House Dictionary of the English Language (1966) as being, "something that comes in as an addition or increase, esp. by chance"—a definition that might embrace an inheritance. No doubt, this is a possible meaning of the word, and the ordinary and common meaning of a doubtful word may be established by the definition of a recognized dictionary. The definition cited, however, is not the preferred definition of the Random House Dictionary. The preferred definition therein is, "the returns that come in periodically, esp. annually, from property, business, labor, etc.; revenue; receipts." Synonyms cited in the Random House Dictionary are: "Interest, salary, wages, annuity, gain, return, earnings." Certainly, the preferred definition is more consonant with the usual understanding of the word, "income," than the second definition, relied upon by respondent.

Respondent also cites *Woller v. Department of Taxation* (1967), 35 Wis. 2d 227, 234, 151 N. W. 2d 170, for the holding that "income" for tax purposes is defined as "cash or its equivalent; *i.e.*, it must be money or that which is convertible into money." From this, apparently counsel assumes that all receipts of money are income, not only for the purposes of taxation, but under the terms of the Veterans Home statute. This, of course, is simply not true. While all income for tax purposes must be cash or its equivalent, all cash or its equivalent is not income for tax purposes. For example, there is excluded from gross income under a portion of the Wisconsin corporate income tax statutes: "The value of property acquired by gift, bequest, devise or inheritance." Sec. 71.03 (2) (a), Stats. The same rule is applicable to personal income for tax purposes. Sec. 71.02 (2) (d) and (e); 26 USCA sec. 102.

We therefore conclude that the argument posed by the state is without validity. The question remains, however —does a fair interpretation of the 1963 statutes result in the conclusion that it was the intent of the legislature to include such items as inheritances in the definition of income? It should be noted in the first place that "income" in sec. 45.37 (9), Stats. 1963, is an undefined word. It is followed by an enumeration of certain items that are considered to be income. In that respect it is unlike the 1965 statute which defines "income" as: "Money, property or anything of monetary value received from any source to which a member may become entitled subsequent to admission." Thereafter, in the 1965 statute, follows an enumeration. The 1963 statute, however, contains no such overall descriptive phrase as does the 1965 statute. We are therefore, in our interpretation of the word, "income," confined to the meaning of the word as revealed by its usage in the statute, the preferred and common dictionary definition set forth above, or the technical definition as set forth in the tax statutes. None of these definitions would interpret "income" as desired by the state.

Looking to the statute and the examples of income set forth, it becomes obvious that the types of payment enumerated as income are recurring and periodic payments only: Pensions, annuities, and social security. Insurance payments are specifically limited to "recurrent" insurance payments. It is apparent that at least some types of receipts were meant to be excluded. Even with the exculpatory phrase, "without limitation by enumeration," it is apparent that the words themselves, in the absence of an overall definition of income, confine "income" to a rather narrow meaning.

An accepted canon of statutory construction is *noscitur a sociis*. *Noscitur a sociis* is explained in Broom's *Legal Maxims* (8th ed., 1911, Sweet & Maxwell, Ltd., London),

page 447, as a rule of statutory construction that "the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it." The words associated with the word, "income," in this statute and which purport to be examples of it refer to payments that are of a recurrent nature. By no stretch of the imagination is a singular incident like the receipt of an inheritance similar to any one of them. We conclude that nothing in the statutory language evinces a legislative intent to include an inheritance within the meaning of the term, "income," as used in sec. 45.37 (9), Stats. 1963. Our interpretation of the legislature's meaning of the term, "without limitation by enumeration," is simply that it was the legislative intent to include as income not only the enumerated recurrent payments but other recurrent payments of a similar nature but not set forth.

It should be noted that the 1965 law specifically provided that devises, bequests and hereditaments were to be encompassed within the definition of income. We can only conclude that by the legislature's change of the statute it intended to include what had previously been omitted. As we said in *Green Bay Drop Forge Co. v. Industrial Comm.* (1953), 265 Wis. 38, 50, 60 N. W. 2d 409, 61 N. W. 2d 847:

". . . if the law before the enactment of ch. 328 . . . was the same as provided in such chapter, there would have been no occasion for enacting the same. If any presumption applies, it is that the legislature by reason of the amending enactment sought to change the existing law."

It is therefore our conclusion that sec. 45.37 (9), Stats. 1963, did not include an inheritance as "income" and therefore Anna Geiwitz was not contractually obligated to turn the inheritance over to the state of Wisconsin. She had the right to renounce if she so desired.

The revised statute, 1965, shows that it was the intent of the legislature that all assets should be included as income. Perhaps it was the purpose of the previous legislature to set forth the same intent; however, in the 1963 statute it simply did not do so. The Department of Veterans Affairs is not, however, remediless in the event that one of the members of its Home at King acquires assets in excess of those which are the maximum permitted at the time a resident is admitted to the Home. Sec. 45.37 (8), Stats., indicates that a change in the financial condition of a resident may result in a termination of eligibility for continued residence even though the asset is not one described as "income" in the statutes. If assets are subsequently acquired, the Home has a lien upon such assets for the care and treatment of the resident while at the Grand Army Home. Sec. 45.37 (12).

In passing we note that the renunciation statute, sec. 237.01 (8), Stats., provides in part that:

"If a person to whom property would descend . . . renounces all or any part of such property . . . then no interest in the property . . . so renounced shall be deemed to have vested in such person and such property or part thereof shall descend or be distributed as if such person had predeceased the intestate."

The effect of a valid renunciation is the same as though the renouncing party, at least in respect to the intestate property, had predeceased the intestate. Accordingly, in a situation such as that in which we find Anna Geiwitz, where she has not contractually disabled herself from renouncing the inheritance, the legislature has decreed that this inheritance was at no time an asset of Anna Geiwitz.

We need not in this opinion pursue the question of whether the Department of Veterans Affairs could lay claim to an inheritance even in a situation where a contract executed under the 1965 statute was applicable.

The attorney general points out that, under the statute, in the event a member of the Home acquires a right to a substantial inheritance, "she had the right to leave the Home or remain by turning over her assets per schedule." We do not in this case decide that a member of the Home who receives an inheritance has that option or whether, by the contract, he has made an irrevocable assignment to the Home.

Certain issues posed by the petition of the Department of Veterans Affairs are not disposed of by the proceedings below or by this appeal. The question of Anna Geiwitz's competency was bypassed by stipulation of the parties.

Under the facts before us, we conclude that the inheritance from Sophia Nottingham was not income under the terms of the 1963 statute and that Anna Geiwitz was not foreclosed from her option to renounce the inheritance.

*By the Court.*—Order reversed.