In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-1642

HAMMOND POWER SOLUTIONS, INC.,

*Plaintiff-Appellant,*

*v.*

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PA, and ILLINOIS NATIONAL INSURANCE COMPANY,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:22-cv-00965-BHL — **Brett H. Ludwig**, *Judge.*

———————————

ARGUED APRIL 10, 2025 — DECIDED JULY 9, 2025

———————————

Before RIPPLE, HAMILTON, and PRYOR, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Hammond Power
Solutions manufactures and distributes electric transformers.
From 2017 to 2022, Hammond Power purchased materially
identical commercial liability insurance policies from the
defendants, National Union Fire Insurance Company and
Illinois National Insurance Company (together, AIG). The
policies contained a coverage exclusion for claims for bodily

injuries arising from "radioactive matter or any form of radiation."

In 2022, two people sued Hammond Power alleging harm from electromagnetic field (EMF) radiation coming from transformers near their apartment. The issue here is whether AIG was obliged to defend and indemnify Hammond Power in that lawsuit—which the parties agree involved "radiation" in the form of EMF radiation. Applying Wisconsin law, we agree with the district court that the coverage exclusion of "any form of radiation" means "any form of radiation," including the EMF radiation alleged in the underlying lawsuit. Accordingly, we affirm the district court's grant of summary judgment in favor of AIG.

I.  *Factual and Procedural Background*

Hammond Power manufactures electric transformers and distributes them worldwide. Transformers connect to high-voltage transmission lines and reduce those high voltages to levels suitable for household use, for example. Like any system involving the movement of electricity, this process creates electromagnetic fields. The parties agree that electromagnetic fields qualify as "radiation."

During the relevant years of 2017 to 2022, Hammond Power purchased commercial general liability insurance policies from the two defendant insurance companies, both subsidiaries of American International Group, Inc. All the policies provided for indemnification and defense of Hammond Power for claims for bodily injury, death, and property damage, as well as other types of liability. However, the policies also had the following exclusion that is the focus of this appeal:

**RADIOACTIVE MATTER EXCLUSION**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY
COVERAGE FORM

**Section I. – Coverages, Coverage A. – Bodily Injury and Property Damage Liability, 2. – Exclusions,** is amended to add:

> "Bodily injury" or "property damage" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

**Section I. – Coverages, Coverage B. – Personal and Advertising Liability, 2. – Exclusions,** is amended to add:

> "Personal and advertising injury" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

In 2022, Dragan Micic and Lidija Bubanja filed a negligence lawsuit in a New York state court seeking damages for injuries allegedly caused by electric transformers manufactured by Hammond Power. They alleged that the transformers were installed adjacent to their bedroom and "emitted dangerous levels of electromagnetic radiation." More specifically, the Micic/Bubanja lawsuit alleged that electric transformers manufactured and installed by Hammond Power exposed Micic and Bubanja to "EMF radiation" that gave Micic cancer. Hammond Power requested that AIG defend and indemnify it against the lawsuit. AIG denied coverage under

the "Radioactive Matter Exclusion," noting that the lawsuit asserted claims within the exclusion for claims for harm arising out of exposure to "any form of radiation." Hammond Power asked AIG to reconsider the denial, and AIG again denied coverage.

Hammond Power filed this suit in state court seeking a declaration of coverage and alleging breaches of the duty to defend and the implied covenant of good faith and fair dealing. AIG removed the case to the Eastern District of Wisconsin. Both parties later moved for summary judgment on the question of coverage.

The district court granted summary judgment for AIG, concluding: "No reasonable insured in Hammond's position would expect a policy that excludes coverage for bodily injuries arising from exposure to 'any form of radiation' to provide coverage for bodily injuries arising from exposure to EMF radiation, which Hammond admits is a form of radiation." *Hammond Power Solutions, Inc. v. Nat'l Union Fire Ins. Co.*, 722 F. Supp. 3d 885, 891 (E.D. Wis. 2024). Based on this conclusion, the court also granted summary judgment for AIG on Hammond Power's duty-to-defend and bad-faith claims. *Id.* at 892–93**.** Hammond Power has appealed.

II.  *Analysis*

We review de novo a district court's decision on a motion for summary judgment. *Atain Specialty Ins. Co. v. Watson*, 95 F.4th 541, 543 (7th Cir. 2024). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering cross-motions for summary judgment, we construe "all facts and inferences arising

from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). Because we are reviewing the district court's grant of summary judgment in AIG's favor, we assess evidence and any factual issues in the light reasonably most favorable to Hammond Power.

Wisconsin law governs this suit under state law within our diversity jurisdiction. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Wisconsin law, insurance agreements are interpreted using ordinary principles of contract construction. *Folkman v. Quamme*, 2003 WI 116, ¶12, 264 Wis. 2d 617, 630–31, 665 N.W.2d 857, 864; *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (Wis. 1990). Wisconsin courts assessing insurance coverage disputes conduct a three-step analysis. They first ask whether "the insuring agreement provides an initial grant of coverage…. Second, if the policy initially grants coverage, the court then considers the exclusions to determine whether any of them preclude coverage. Finally, if an exclusion applies, the court determines whether any exceptions to the exclusion reinstate coverage." *Fontana Builders, Inc. v. Assurance Co. of America*, 2016 WI 52, ¶50, 369 Wis. 2d 495, 522–23, 882 N.W.2d 398, 411 (citations omitted). The policies issued to Hammond Power use broad language granting coverage for the personal injury claims against Hammond Power in the underlying lawsuit, so the question is whether the radiation exclusion precludes coverage.

The Supreme Court of Wisconsin has explained that an insurance policy is "construed to give effect to the intent of the parties as expressed in the language of the policy. Therefore, the first issue in construing an insurance policy is to determine whether an ambiguity exists regarding the disputed

coverage issue." *Folkman*, 264 Wis. 2d 617, ¶¶12–13 (citation omitted). Insurance policy language is ambiguous when it is "susceptible to more than one reasonable interpretation." *Id.* ¶13 (internal quotation marks omitted), quoting *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶10, 245 Wis. 2d 186, 193, 629 N.W.2d 150, 154; see also *Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶23, 338 Wis. 2d 761, 772, 809 N.W.2d 529, 535. A "mere disagreement among or between parties does not render policy language ambiguous." *Fontana Builders*, 369 Wis. 2d 495, ¶55. Ambiguity may be found based on the context of the entire policy even when the language itself is clear and unambiguous, *Folkman*, 264 Wis. 2d 617, ¶19, but "any contextual ambiguity in an insurance policy must be genuine and apparent on the face of the policy, if it is to upset the intentions of an insurer embodied in otherwise clear language." *Id.* ¶29. Wisconsin courts interpreting texts focus "primarily on the language" and assume that the drafter's intent is expressed in that language. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 124 (explaining statutory interpretation principles).

A.  *The Exclusion's Text*

We begin with the policies' language. We agree with the district court that the exclusionary language here is unambiguous as applied to the underlying claim for injuries allegedly caused by electromagnetic field radiation. The policies exclude claims for bodily injury or property damage "arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter *or any form of radiation*." That broad language—especially the phrase "any form"—defeats Hammond Power's ambiguity argument. See, e.g.,

*Bernal v. NRA Group, LLC*, 930 F.3d 891, 892, 896 (7th Cir. 2019) (contract authorized collection of "any amounts" due and "any costs" incurred; court concluded that "absent limiting language, 'any' should mean 'any'"); *Pierce v. Atchison, Topeka & Santa Fe Railway Co.*, 65 F.3d 562, 567–68 (7th Cir. 1995) (contract released "any and all claims" against railway company; release clearly covered employee's discrimination claims because "'any and all' language is not ambiguous"); *J.G. v. Wangard*, 2008 WI 99, ¶45, 313 Wis. 2d 329, 354, 753 N.W.2d 475, 488 (discussing Wisconsin precedent and explaining that "the phrase 'any covered person' in the policies' intentional acts exclusions, like the phrase 'any insured' in the *Taryn E.F.* policy, unambiguously precludes coverage for all insureds"), citing *Taryn E.F. v. Joshua M.C.*, 178 Wis. 2d 719, 727, 505 N.W.2d 418, 422 (Wis. App. 1993). In Hammond Power's policies, bodily injury arising from "any form of radiation" is excluded from coverage. So, given that EMF is a form of "radiation," we agree with the district court that the Micic/Bubanja lawsuit is excluded from coverage. See *Day v. Allstate Indem. Co.*, 2011 WI 24, ¶28, 332 Wis. 2d 571, 585, 798 N.W.2d 199, 206 ("We give undefined words and phrases their common and ordinary meaning.").

Hammond Power offers several arguments to avoid the effect of this broad and unambiguous language. It first argues that the district court erred by focusing on the text of the contracts rather than considering the intent of the parties as part of the plain-meaning analysis. As noted above, though, insurance policies in Wisconsin are "construed to give effect to the intent of the parties as expressed in the language of the policy. Therefore, the first issue in construing an insurance policy is to determine whether an ambiguity exists regarding the disputed coverage issue." *Folkman*, 264 Wis. 2d 617, ¶¶12–13; cf.

*Kalal*, 271 Wis. 2d 633, ¶44 (explaining that courts look to statutory language so that a statute "may be given its full, proper, and intended effect"). Wisconsin courts look to broader canons of construction only when the plain text is unclear. *First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971, 976 (7th Cir. 2007) (applying Wisconsin law: "If the language of the policy is plain and unambiguous, it is enforced as written, without resort to rules of construction."). In this case, the district court did not err by focusing on the text without reference to other considerations.

Hammond Power suggests that two cases from AIG's opening brief show that "any" should be read narrowly so as to allow coverage for claims arising from electromagnetic field radiation. We disagree. In the first, *Marotz v. Hallman*, 2007 WI 89, 302 Wis. 2d 428, 734 N.W.2d 411, the Wisconsin Supreme Court interpreted an insurance statute that permitted automobile insurers to reduce their policy limits for accident coverage based on amounts paid by or on behalf of "any person or organization that may be legally responsible for the bodily injury or death for which the payment is made." *Id.* ¶22; see also Wisconsin Stat. § 632.32(5)(*i*)(1). The court held that the statute encompassed payments made by a fully insured tortfeasor, based in part on the statute's use of the broad "any." *Id.* ¶¶25, 28. The court also explained, however, that the statute's scope was limited by a concluding provision, which clarified that the statute covered a limited range of payments: those made "for a bodily injury arising from the accident." *Id.* ¶¶24, 26. In other words, *Marotz* stands for the principle that "any" means "any"—but that a broad universe can be narrowed by subsequent limiting language.

The *Marotz* principle does not help Hammond Power here. There are no qualifiers in the exclusion in this case that limit "any form of radiation" as the language did in *Marotz*. The policy language would have a different scope if the exclusion were written as "any form of radiation *that comes from radioactive matter*" or "any form of radiation *that does not come from electromagnetic fields*." But that is simply not how the exclusion is written, and we cannot add language to the contract. *Briggs v. Elec. Auto-Lite Co.*, 37 Wis. 2d 275, 281, 155 N.W.2d 32, 35 (Wis. 1967) ("We are not free to read into the contract what is not there….").

Hammond Power also relies on *Manitowoc Co. v. Lanning*, 2018 WI 6, 379 Wis. 2d 189, 906 N.W.2d 130, where the Wisconsin Supreme Court explained that a non-solicitation provision in the contract of a company's ex-employee—prohibiting solicitation of "any employee(s)"—meant what it said: the plaintiff could not solicit any of the company's 13,000 employees worldwide. *Id.* ¶¶25, 46. The opinion included language about avoiding "absurd results" under the statute that governed non-compete agreements, see *id.* ¶45, but there is nothing absurd about giving the exclusion here its broad and clear meaning. The *Manitowoc* case also stands for the principle that broad contractual language should be understood to have a broad scope.[1]

Hammond Power's next textual argument is that the phrase "any form of radiation" should be read in light of the

---

[1] *Manitowoc* involved considerations unique to the non-compete context, such as whether the clauses served as an unreasonable restraint of trade under Wisconsin law. See *Manitowoc*, 379 Wis. 2d 189, ¶¶24, 63. Still, the case stands for the principle that broad contractual language means what it says.

preceding phrase, "any radioactive matter." The disjunctive "or" separating the two phrases shows that they are meant to be read separately. *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶55, 319 Wis. 2d 274, 301, 767 N.W.2d 898, 911 ("The disjunctive 'or' plainly separates one from the other."); *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 638, 586 N.W.2d 863, 867 (Wis. 1998) (the word "or" in an insurance contract was unambiguously disjunctive). This is not a "gossamer" distinction. An ordinary policyholder would assume that "any form of radiation" means what it says.

Hammond Power also relies on two related linguistic canons of legal interpretation—ejusdem generis and noscitur a sociis—but its arguments are unpersuasive for similar reasons. Both canons broadly mean that general terms "may be defined by the other words [in a list] and understood in the same general sense." *Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶66, 327 Wis. 2d 572, 605, 786 N.W.2d 177, 194.

Ejusdem generis teaches that a catch-all term in a list will be interpreted in light of the other items in the list. See, e.g., *Stroede v. Society Ins.*, 2021 WI 43, ¶14, 397 Wis. 2d 17, 26, 959 N.W.2d 305, 309 (defining the canon); *Wisconsin Builders, Inc. v. General Ins. Co. of America*, 65 Wis. 2d 91, 101–03, 221 N.W.2d 832, 837–38 (Wis. 1974) (interpreting insurance exclusion of "earth movement" in light of subsequent examples of earth movement). The policies here set out two separate excluded categories: bodily injuries arising from exposure to radioactive matter and bodily injuries arising from exposure to "any form of radiation." There is no catch-all phrase to support application of ejusdem generis. Likewise, Wisconsin courts have held that ejusdem generis does not apply when the plain text of an insurance exclusion unambiguously applies to certain

events even when the language includes a broad phrase in a list. See *Hirschhorn*, 338 Wis. 2d 761, ¶35 (broad term "waste" given its unambiguous meaning; court declined to rewrite using ejusdem generis).

Similarly, noscitur a sociis teaches that "the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it." *In re Nottingham's Estate*, 46 Wis. 2d 580, 589–90, 175 N.W.2d 640, 645 (Wis. 1970) (internal quotation marks omitted), quoting Broom's Legal Maxims 447 (8th ed., 1911). As a threshold matter, the meaning of "any form of radiation" is not "doubtful" as applied to EMF radiation. See, e.g., *Benson v. City of Madison*, 2017 WI 65, ¶31, 376 Wis. 2d 35, 55, 897 N.W.2d 16, 26 (interpreting state statute and declining to use noscitur a sociis when "word 'corporation' is not unclear"). The disjunctive "or" also makes it difficult to characterize the phrase "any form of radiation" as associated with other words in the exclusion. See *id.* (explaining that noscitur a sociis does not warrant non-textual distinctions and collecting cases declining to apply canon).[2]

---

[2] AIG argues that under Wisconsin law, linguistic canons like ejusdem generis and noscitur a sociis should be used only when there is ambiguity in the text. See, e.g., *Hirschhorn*, 338 Wis. 2d 761, ¶24 ("Absent a finding of ambiguity, we will not apply rules of construction to rewrite an insurance policy to bind an insurer to a risk it did not contemplate and for which it did not receive a premium."); *Smith*, 155 Wis. 2d at 811 ("[W]hen the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction."); *Gonzalez v. City of Franklin*, 137 Wis. 2d 109, 122, 403 N.W.2d 747, 752 (Wis. 1987) (same). We see the argument but think that these canons, which are really just tools for understanding language, give color to intrinsic textual language and are therefore fair game for initial plain-meaning assessments (assuming the principles announced for statutory interpretation in *Kalal* also apply to contract interpretation). See *Kalal*, 271 Wis. 2d 633, ¶48 ("[S]cope, context, and purpose are perfectly

Hammond Power's last textual argument is that "any form of radiation" cannot really mean *any* form of radiation because it would then include "sunburn, heat sickness, lightning strikes, and microwave burns," results that Hammond Power deems absurd. First, we are not convinced these would be absurd results, given the broad text of the exclusion. And whether future results might be absurd can be resolved in future cases: "these hypothetical facts are not before the court. We do not reach decisions based on hypothetical facts." *Smith*, 155 Wis. 2d at 813–14 (holding underinsured motorist coverage did not apply under language of policy, despite insured's reliance on "certain hypothetical situations"); see also *Marotz*, 302 Wis. 2d 428, ¶21 ("Because every possible scenario cannot be anticipated by the words selected by the legislature, an unambiguous statute in one context may be ambiguous in another."); *Scott v. American Standard Ins. Co. of Wisconsin*, 132 Wis. 2d 304, 309, 392 N.W.2d 461, 464 (Wis. App. 1986) ("We suspect that John Deere's policy was not drafted with this fact situation in mind. However, the policy's language is clear beyond peradventure, and it extends coverage to Waters under the peculiar facts of this case. Where the policy describes coverage in clear and unambiguous terms, we … merely apply the language of the policy to the facts at hand."); *Hammel v. Ziegler Financing Corp.*, 113 Wis. 2d 73, 77, 334 N.W.2d 913, 915 (Wis. App. 1983) ("Common sense tells us that the process of construing an agreement includes, in addition to the

---

relevant to a plain-meaning interpretation of an unambiguous statute as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself, rather than extrinsic sources …."). Either way, these linguistic canons do not change the outcome here.

definition of possible ambiguous terms, the application of the terms to the case in question.").

Hammond Power's cited cases do not require a different result. Its primary authority, *American States Ins. Co. v. Koloms*, applied Illinois law, not Wisconsin law. 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997). In that case, the Illinois Supreme Court assessed whether an insurance policy that excluded bodily injuries arising out of "escape of pollutants" covered carbon monoxide emissions. The court held, based on extensive drafting history and a concern over absurd results, that "pollutants" applied only to environmental pollutants, and not to an accidental release of carbon monoxide due to a faulty furnace. *Id.* at 79–82. *Koloms* does not carry the day in Wisconsin, given the jurisdiction's emphasis on plain language—a focus that was rejected in *Koloms*. See *id.* at 79 (rejecting a "purely literal" interpretation of the exclusion).

We agree with AIG that a comparison of *Koloms* to *Connors v. Zurich American Ins. Co.* illustrates the difference between Illinois and Wisconsin law of policy interpretation. 2015 WI App 89, 365 Wis. 2d 528, 872 N.W.2d 109. In *Connors*, the Wisconsin Court of Appeals concluded that a "standard" pollution exclusion—similar to the exclusion in *Koloms*—would preclude coverage of injuries resulting from Legionella bacteria because such bacteria were "largely undesirable and not universally present" and therefore qualified as pollutants. *Id.* ¶35 (internal quotation marks omitted), quoting *Wilson Mut. Ins. Co. v. Falk*, 2014 WI 136, ¶38, 360 Wis. 2d 67, 92, 857 N.W.2d 156, 167. While it is not our role to re-litigate *Koloms*, we note that carbon monoxide emissions would likely qualify as "pollutants" under as broad a reading as the court adopted in *Connors*. This juxtaposition highlights Wisconsin's

emphasis on plain text and standard application of broad, un-ambiguous, language.[3]

B.  *Non-Textual Arguments*

Hammond Power argues next that the district court failed to apply appropriately several Wisconsin canons of construction, including the "basic canon" that exclusions are applied narrowly. But for a court to engage in a narrowing construction, it must find first that the language is ambiguous, at least as applied to the facts at issue. See *Mau v. North Dakota Ins. Reserve Fund*, 2001 WI 134, ¶13, 248 Wis. 2d 1031, 1042, 637 N.W.2d 45, 50 ("when the language of the policy is plain and unambiguous, we will enforce the policy as written and not engage in construction"); see also *Phillips v. Parmelee*, 2013 WI 105, ¶15, 351 Wis. 2d 758, 765, 840 N.W.2d 713, 716 ("The rule of narrow construction of an exclusion against the insurer, however, 'is not applicable if the policy is unambiguous.'" (quoting *Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 152, 539 N.W.2d 883, 886 (Wis. 1995))). We could stop there, but three of Hammond Power's further arguments should be addressed.

The first is that the phrase "any form of radiation" is ambiguous when read in the broader context of the policies. Appellant's Br. at 19. Wisconsin law recognizes that "contextual ambiguity is established precedent. As a general matter, it has long been a rule of contract construction in Wisconsin that 'the

---

[3] Ultimately, the *Connors* court concluded that the policy was ambiguous because it enumerated several categories of covered pollutants, all of which were byproducts of industrial operations. 365 Wis. 2d 528, ¶57. Similar defining language in this policy might change the result, but again, we decline to read in a non-existent limiting clause.

meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole.'" *Folkman*, 264 Wis. 2d 617, ¶24, quoting *Tempelis v. Aetna Cas. & Sur. Co.*, 169 Wis. 2d 1, 9, 485 N.W.2d 217, 220 (Wis. 1992). We respect that principle, of course, but the question is "what degree of contextual ambiguity is sufficient to engender an objectively reasonable alternative meaning and, thereby, disrupt an insurer's otherwise clear policy language?" *Id.* ¶30. The Wisconsin Supreme Court answered that question in *Folkman*, explaining that "inconsistent provisions, provisions that build up false expectations, and provisions that produce reasonable alternative meanings" can create contextual ambiguity. *Id.* ¶31. The insurance policies at issue in this case offered no such inconsistencies, false expectations, or reasonable alternative meanings.

Hammond Power argues that we should find contextual ambiguity because the exclusion is titled the "Radioactive Matter Exclusion," implying that it would apply only to claims for damages caused by radioactive matter. But the title alone does not suffice to create ambiguity in an otherwise unambiguous provision. See, e.g., 2 Couch on Insurance § 22:6 (2025) ("while a caption may be used to explain an ambiguity in the operative part of the clause, a caption may not be used to create ambiguity where none exists"); *Wadzinski v. Auto-Owners Ins. Co.*, 2012 WI 75, ¶23, 342 Wis. 2d 311, 329, 818 N.W.2d 819, 827–28 ("interpretation of an insurance policy cannot rest on a caption alone; the entire policy provision must be considered" (citing *Ott v. All–Star Ins. Corp.*, 99 Wis. 2d 635, 645, 299 N.W.2d 839, 844 (Wis. 1981) ("it is the substantive meaning and operation of [the provision], rather than … the heading of the Article, which must determine its legal nature and effect"))).

Beyond the general rule against letting titles override plain text, there are other reasons the argument is not persuasive here. The first is the disjunctive structure of the exclusion. As discussed above, it highlights that the exclusion applies to claims for bodily injuries arising from exposure to radioactive matter *or* those arising from exposure to "any form of radiation." Second, AIG argues that Hammond Power's blinkered focus on the title would make redundant the phrase "any form of radiation." We take arguments about surplusage and redundancy with a grain of salt, especially in insurance policies. See *Crescent Plaza Hotel Owner, L.P. v. Zurich American Ins. Co.*, 20 F.4th 303, 311 (7th Cir. 2021) ("insurance policies often use overlapping provisions to provide greater certainty on the scope of coverages and exclusions," collecting cases). Still, if the policies here meant "any form of radiation *resulting from radioactive matter*," they would have said that. Instead, the contracts specify that AIG will not cover claims for bodily injuries arising from radioactive matter *or* any form of radiation. Wisconsin law does not let the title of the provision rewrite the exclusion.

Hammond Power responds with a redundancy argument of its own. It contends that a broad reading of "any form of radiation" would make redundant the preceding "radioactive matter" phrase. The theory is that any harm from radioactive matter necessarily involves radiation. First, we are not scientists and have no way of assessing whether this is true. But more important, it is not necessarily redundant for the exclusion to specify both a category of sources (radioactive matter) and a method of harm (radiation) in the exclusion. This reading is the best way to give effect to "each word or provision of the contract." *Jones v. Jenkins*, 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (Wis. 1979).

Next, we are unpersuaded by Hammond Power's argument that the exclusion should be read differently because it is "buried near the end of a lengthy policy…." The exclusion itself states that it "modifies insurance provided under" the general commercial liability policy. Commercial insurance contracts are sure to be complex; as a general matter, the location of a provision will not alter that provision's meaning. Cf. *VerHaagh v. Farah*, 2008 WI App 83, ¶¶8–10, 312 Wis. 2d 479, 751 N.W.2d 902 (Table) (unpublished; exclusion on page 89 of policy did not create contextual ambiguity when declarations section made clear that exclusions were part of the policy).

Hammond Power's next argument is that its business model should inform how we read the exclusion. It contends that "one of the biggest potential liabilities associated with manufacturing transformers is the EMF radiation emitted from those transformers." We assume that is true, but if insurance coverage for such product liability risks and expenses was so important for Hammond Power, it is fair to ask why it did not take steps to secure crystal-clear coverage for such claims. Even drawing all reasonable inferences in favor of Hammond Power, we cannot assume that the parties intended the policy to cover EMF radiation when the plain text of the exclusion says that the policy will not cover injuries resulting from "any form of radiation." This ordinary reading does not render the policy meaningless or illusory. There are plenty of bodily-injury risks and other risks associated with running any business, including this business, that go beyond EMF radiation. See generally *Gillund v. Meridian Mut. Ins. Co.*, 2010 WI App 4, ¶27, 323 Wis. 2d 1, 18, 778 N.W.2d 662, 671 (policy is illusory when "a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances" (internal quotation marks omitted)

(quoting *Link v. General Cas. Co. of Wisconsin*, 185 Wis. 2d 394, 400, 518 N.W.2d 261, 263 (Wis. App. 1994))).[4]

Finally, Hammond Power relies on extrinsic evidence to inform how the exclusion should be read. It explains that other insurance contracts have EMF-specific exclusions—which it sees as evidence that the policies at issue here could not have meant to exclude EMF-related injuries. But it is well established in Wisconsin law that "absent ambiguity, the intent of the parties must be determined from the four corners of the insurance policy itself." *Sambs v. City of Brookfield*, 66 Wis. 2d 296, 317, 224 N.W.2d 582, 593 (Wis. 1975); see also *Johnson Controls, Inc. v. London Mkt.*, 2010 WI 52, ¶49, 325 Wis. 2d 176, 198, 784 N.W.2d 579, 589 ("The question is what the language of the 1973–1976 contract does provide, not what the language could provide or what is provided for in a contract executed by the parties years later."). It does not matter that AIG could have written the policies differently or included more specific language. *Folkman*, 264 Wis. 2d 617, ¶42 ("We may not judicially revise policy language in this manner."). The policies' language is sufficiently clear to exclude from coverage claims of radiation-related injuries like those alleged in the Micic/Bubanja lawsuit.

---

[4] In some circumstances, insurance coverage disputes might be easier to resolve if the parties submitted evidence showing how premiums change depending on the incorporation of relevant exclusions or riders for additional coverage. See *Wadzinski*, 342 Wis. 2d 311, ¶17 n.8 ("Although the factor of policy cost will not be dispositive in ascertaining the parties' intentions, the amount paid for coverage may lend support to the conclusion that potentially ambiguous terms should be construed one way rather than another.").

Because the policies' exclusion for claims arising from exposure to any form of radiation applies to the underlying lawsuit against Hammond Power, AIG had no duty to defend or to indemnify Hammond Power for those claims. The judgment of the district court is AFFIRMED.